1  **WO**                                                                          KM

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9  Dwayne McKaney,                          )   No. CV 12-148-PHX-GMS (LOA)
                                             )
10              Plaintiff,                    )   **ORDER**
                                             )
11 vs.                                       )
                                             )
12                                           )
   Charles Keeton, et al.,                   )
13                                           )
                Defendants.                  )
14                                           )
                                             )
15 _____)

16        On January 23, 2012, Plaintiff Dwayne McKaney, who is confined in the Federal

17 Correctional Institution-Terminal Island, filed a *pro se* civil rights Complaint pursuant to 42

18 U.S.C. § 1983[1] and an Application to Proceed *In Forma Pauperis*.  In a February 28, 2012

19 Order, the Court granted the Application to Proceed and dismissed the Complaint because

20

21

22        [1]Plaintiff is a federal prisoner and alleges violations of his constitutional rights by

23 employees of the private prison in which he was confined at the time of the incidents which
   form the basis for his Complaint.  Because Plaintiff is a federal prisoner, his claims are more

24 appropriately brought under Bivens v. Six Unknown Named Agents of Federal Bureau of

25 Narcotics, 403 U.S. 388 (1971).  "Actions under § 1983 and those under Bivens are identical
   save for the replacement of a state actor under § 1983 by a federal actor under Bivens."

26 Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (quoting Van Strum v. Lawn, 940 F.2d 406,

27 409 (9th Cir. 1991)).

28

1  Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file an amended

2  complaint that cured the deficiencies identified in the Order.

3      On March 28, 2012, Plaintiff filed his First Amended Complaint (Doc. 10).  The Court

4  will dismiss the First Amended Complaint and this action.

5  **I.    Statutory Screening of Prisoner Complaints**

6      The Court is required to screen complaints brought by prisoners seeking relief against

7  a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

8  § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

9  claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

10  be granted, or that seek monetary relief from a defendant who is immune from such relief.

11  28 U.S.C. § 1915A(b)(1), (2).

12     A pleading must contain a "short and plain statement of the claim *showing* that the

13  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not

14  demand detailed factual allegations, "it demands more than an unadorned, the-defendant-

15  unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

16  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

17  statements, do not suffice."  Id.

18     "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

19  claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly,

20  550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

21  that allows the court to draw the reasonable inference that the defendant is liable for the

22  misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for

23  relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

24  experience and common sense."  Id. at 1950.  Thus, although a plaintiff's specific factual

25  allegations may be consistent with a constitutional claim, a court must assess whether there

26  are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

27     But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

28  must "continue to construe *pro se* filings liberally."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th

1   Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards

2   than formal pleadings drafted by lawyers.'"  Id. (quoting Erickson v. Pardus, 551 U.S. 89,

3   94 (2007) (*per curiam*)).

4   **II.     First Amended Complaint**

5       Plaintiff names Warden Charles Keeton and Dr. Osteene as Defendants in the First

6   Amended Complaint.  Plaintiff raises four claims for relief.

7       In Count I, Plaintiff claims that his Eighth Amendment rights were violated by

8   overcrowded conditions.  Plaintiff alleges that an inmate in his unit contracted a mysterious

9   disease that caused the inmate to break out in sores all over his body.  Plaintiff contends that

10  because of the overcrowded conditions, he and other inmates "started to get bumps all over

11  them that itch day and night."  Plaintiff claims that Defendant Keeton was advised by

12  Plaintiff and other inmates through inmate letters that there was an ill inmate in the unit.

13  Plaintiff also alleges that Defendant Keeton controls policy and "should have made sure there

14  was proper screening of incom[ing] inmates for contagious disease such as . . . what inmate

15  Begay had that made the Plaintiff's condition of confinement oppressive."  Finally, Plaintiff

16  contends that Defendant Keeton and subordinates failed to act "and could have to stop this

17  dangerous condition."

18      In Count II, Plaintiff alleges that his First Amendment rights were violated when he

19  and other inmates submitted "informal resolutions" for which they received no response.

20  Plaintiff claims that he then spoke with Defendant Belloc.[2]  Plaintiff claims that Defendant

21  Belloc "told Plaintiff and others no she was not going to give . . .grievance form[s], reg. or

22  emergency, she stated medical knows now so you can't grieve the issue."  Plaintiff claims

23  that the denial of forms prevented him from filing grievances and resulted in delayed medical

24  treatment.

25

26

27      ───────────────

28      [2]Plaintiff has not listed Defendant Belloc as a Defendant in the First Amended
    Complaint.  However, because it appears that he intended to name her as a Defendant, the
    Court will consider Plaintiff's claims against Defendant Belloc as if she had been named.

1   In Count III, Plaintiff claims that his Eighth Amendment rights were violated when

2   Defendant Osteene failed to provide him with adequate and timely medical care for the

3   "mysterious disease."  Plaintiff claims that Defendant Osteene "disregarded that risk [to

4   Plaintiff's health] when he first saw [inmate Begay] then went on a 4 week vacation and

5   fail[ed] to advise other medical personnel about the mysterious medical condition . . . and

6   then once he did come back from vacation it still took 2 to 3 weeks for Defendant to realize

7   this dangerous condition was out of control."

8   In Count IV, Plaintiff claims that he was denied meaningful access to the courts

9   because he is denied access to an adequate law library or assistance from someone trained

10   in the law.

11   **III.   Discussion**

12   **A.   Eighth Amendment Claims–Count I and III**

13   Plaintiff is a federal prisoner seeking relief against individual employees of a private

14   prison.  The Supreme Court recently addressed the application of Bivens to such claims and

15   concluded:

16   [W]here . . . a federal prisoner seeks damages from privately employed
    personnel working at a privately operated federal prison, where the conduct
17   allegedly amounts to a violation of the Eighth Amendment, and where that
    conduct is of a kind that typically falls within the scope of traditional state tort
18   law (such as the conduct involving improper medical care at issue here), the
    prisoner must seek a remedy under state tort law.  We cannot imply a Bivens
19   remedy in such a case.

20   Minneci v. Pollard, 132 S.Ct. 617, 626 (2012).

21   As in Minneci, Plaintiff in this case has raised Eighth Amendment claims challenging

22   conduct that typically falls within the scope of traditional state tort law.  Accordingly,

23   Plaintiff cannot maintain an Eighth Amendment Bivens claims against Defendants Keeton

24   and Osteene.  The Court will dismiss Counts I and III for failure to state a claim.

25   **B.   First Amendment Claims–Counts II and IV**

26   While Minneci bars Plaintiff's Eighth Amendment claims against individual

27   employees of a private prison, it remains unclear whether Plaintiff's First Amendment claims

28   are of the type which fall within the scope of traditional tort law.  Id. at 626 ("[W]e can

1  decide whether to imply a <u>Bivens</u> action in a case where an Eighth Amendment claim or state

2  law differs significantly from those at issue here when and if such a case arises.  The

3  possibility of such a different future case does not provide sufficient grounds for reaching a

4  different conclusion here.").   Accordingly, the Court will consider Plaintiff's First

5  Amendment claims on their merits.

6  **1.   Count II-Grievance Process**

7  An inmate has no free-standing constitutional right to a grievance process.  In <u>Mann</u>

8  <u>v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988), the Ninth Circuit held that a prisoner does not

9  have a protected liberty interest in prison grievance procedures.

10  Plaintiff's facts demonstrate that Defendant Belloc failed to adhere to the established

11  grievance procedure, but do not demonstrate that Plaintiff was denied the ability to present

12  grievances or complaints to prison officials.  Plaintiff explicitly alleges in Count II that he

13  filed multiple "informal resolutions," the first step in the grievance process.  Plaintiff's

14  allegations further make clear that Plaintiff presented multiple verbal complaints and requests

15  for action to Defendants and other prison staff.  Accordingly, Plaintiff has failed to show that

16  he was denied his First Amendment right to redress of grievances.[3]

17  **2.   Count IV-Access to Courts**

18  The right of meaningful access to the courts prohibits officials from actively

19  interfering with inmates' attempts to prepare or file legal documents.  <u>Lewis v. Casey</u>, 518

20  U.S. 343, 350 (1996).  The right of access to the courts is only a right to bring petitions or

21  complaints to federal court and not a right to discover such claims or even to ligate them

22  effectively once filed with a court.  <u>Id.</u> at 354.  The right "guarantees no particular

23

24

25  [3]Moreover, it is unclear whether Plaintiff could state an access to courts claim based

26  on his inability to complete the grievance process.  Although Plaintiff is required to exhaust
   administrative remedies to obtain relief federal court, under <u>Minneci</u>, federal relief is not

27  available to Plaintiff for his Eighth Amendment medical claims.  Accordingly, it appears that

28  Plaintiff would be unable to demonstrate an actual injury, as required for an access to courts
   claim.

methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. at 356.

As a matter of standing, for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury" with respect to contemplated litigation. Id. at 349. To show actual injury with respect to contemplated litigation, the plaintiff must demonstrate that the defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous claim that he wished to present. Id. at 352-53.

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim." Id. at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Id. at 355. The nonfrivolous claim must be a direct or collateral attack on the inmate's sentence or a challenge to the conditions of his confinement. Id. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. (emphasis in original).

Plaintiff has not alleged that he was prevented from bringing to court a non-frivolous claims that he wished to present. Accordingly, Plaintiff has failed to state a claim in Count IV.

**IV.    Dismissal without Leave to Amend**

Because Plaintiff has failed to state a claim in his First Amended Complaint, the Court will dismiss the First Amended Complaint. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 538 (9th Cir. 1989). The Court finds that Plaintiff's claims cannot be cured by further amendment. Therefore, the Court will dismiss Plaintiff's First Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1)    Plaintiff's First Amended Complaint (Doc. 10) and this action are **dismissed** for failure to state a claim, and the Clerk of Court must enter judgment accordingly.

(2)     The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

(3)     The docket shall reflect that the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), that any appeal of this decision would not be taken in good faith.

DATED this 15th day of May, 2012.

G. Murray Snow
United States District Judge

- 7 -